UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CAROLINE M. THIBEAULT, | ) | |
| *Individually and in her capacity* | ) | |
| *as legal guardian of Noah Thibeault* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00287-JAW |
| | ) | |
| OAK HILL CONDOMINIUMS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

The occupant of a condominium unit, on her own behalf and on behalf of her disabled adult son, seeks a temporary restraining order against the condominium association and its board members for several alleged violations of the Fair Housing Act, the Maine Human Rights Act, the Maine Condominium Act, and other state law tort claims. The court concludes the requested temporary restraining order should not issue at this time, because the occupant has not demonstrated irreparable harm that, absent injunctive relief, cannot be adequately remedied by damages.

## I.   BACKGROUND[1]

### A.   Procedural History

On April 24, 2026, Caroline Thibeault, individually and in her capacity as legal guardian of her son, Noah Thibeault (collectively, the Plaintiffs), filed a thirteen-

---

[1]   In ruling on the motion as quickly as possible, the Court has done its level best, but the parties should appreciate "the temporal constraints under which the district court labored." *See Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 15 (1st Cir. 2004).

count complaint in Sagadahoc County Superior Court against Oak Hill Condominiums, as well as the Oak Hill Condominium Owners Association and several members of its board, Roland Guerette, Peter Leone, Carla Chatterton, Paula Mckenna, and Steven Lary (collectively, the Defendants). *Notice of Removal*, Attach, 1. *Verified Compl.* (ECF No. 1) (*Compl.*). The Plaintiffs allege the Defendants violated the Fair Housing Act, the Maine Human Rights Act, the Maine Condominium Act, breached their fiduciary duty to the Plaintiffs and other unit owners, and both intentionally and negligently inflicted emotional distress upon the Plaintiffs. *Id.* ¶¶ 199-317. The Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs. *Id.* at 36-53.

That same day, the Plaintiffs also filed a motion requesting a temporary restraining order (TRO), preliminary injunction, and permanent injunction.[2] *Pls.' Mot. for TRO and Prelim. and Permanent Inj.* (ECF No. 7); *Notice of Removal*, Attach. 2, *Pls.' Mot. for TRO and Prelim. And Perm. Inj* (*Mot. for TRO*). The Plaintiffs also filed a motion for an expedited hearing. *See Notice of Removal*, Attach. 4, *Pls.' Mot. for Expedited Hr'g for Pls.' Mot. for TRO and Prelim. and Permanent Inj.* (*Mot. for Hr'g*). On May 19, 2026, the Defendants filed objections to both motions. *Id.*, Attach. 10, *Defs.' Joint Obj. to Mot. for TRO, and Prelim. and Permanent Inj.* (*Defs.' Opp'n*); *id.*, Attach. 11, *Defs.' Joint Obj. to Pls.' Mot. for Expedited Hr'g* (*Obj. to Hr'g*).

---

[2] As the title of this order confirms, the Court addresses only the Plaintiffs' motion for temporary restraining order, not their motion for preliminary or permanent injunction.

On May 29, 2026, the Defendants removed this action to federal court. *Notice of Removal.* On June 19, 2026, the Plaintiffs filed their reply briefs in support of their motions for a TRO and hearing. *Pls.' Reply to Defs.' Joint Obj. to Pls.' Mot. for TRO and Inj. Relief* (ECF No. 9) (*Pls.' Reply*); *Pls.' Reply to Defs.' Joint Obj. to Pls.' Mot. for Expedited Hr'g on Pls.' Mot. for TRO and Inj. Relief* (ECF No. 10) (*Pls.' Hr'g Reply*).

**B.    Factual Background[3]**

This case arises from a dispute over the interpretation of the phrase "commercial activity" under a condominium community's rules. The Plaintiffs, Caroline Thibeault and her son Noah Thibeault, are residents of Oak Hill Condominiums in Topsham, Maine. Ms. Thibeault is the sole caregiver and legal guardian of Noah, who is severely disabled and requires continuous supervision and care. Seeking to find an arrangement that would allow Ms. Thibeault to maintain employment as a licensed hairstylist while providing continuous care for Noah, Ms. Thibeault applied for a reasonable accommodation to provide limited in-home hairstyling services from her Oak Hill condo. Despite confirmation from the Oak Hill property manager and local compliance officer and Ms. Thibeault's belief that her proposed hairstyling service complied with community rules, the Oak Hill Condominium Owners Association Board denied her request for a reasonable accommodation. The Plaintiffs claim the board's failure to grant a reasonable accommodation, including their refusal to engage in a good-faith interactive process,

---

[3]    For the purposes of the requested TRO, the Court reviews the relevant facts as pleaded in the verified complaint and the declarations submitted by the parties, which the Court takes as true at this stage of the proceeding.

violates state and federal law.  The Plaintiffs further allege the Defendants retaliated against the Plaintiffs because of Ms. Thibeault's request for a reasonable accommodation through a pattern of selective enforcement and targeted amendment of community rules, harassment, surveillance, escalating financial penalties, and initiating state foreclosure proceedings in an effort to dissuade the Plaintiffs from exercising their civil rights.

### 1.    The Relevant Parties and the Property

Defendants Oak Hill Condominiums and Oak Hill Condominium Owners Association (collectively, Oak Hill) are a non-profit corporation and condominium unit owners association established under Maine law.  *Id.* ¶¶ 4-5.  Defendants Roland Guerette, Peter Leone, Charla Chatterton, Paula McKenna, and Steven Lary are residents of Oak Hill and members of the Oak Hill Condominium Owners Association's Board (the Board).  *Id.* ¶¶ 6-10.

Plaintiff Caroline Thibeault is the legal occupant of an Oak Hill condominium unit located at 17 Ruby Lane, Unit 1 Topsham, Maine 04086 (the Property).  *Id.* ¶ 1. She is a licensed hairstylist, which is her primary occupation and sole source of income.  *Id.* ¶ 22.  In the past, she had rented a chair or booth at a nearby salon but later began operating her hairstyling business from the Property.  *Id.* ¶ 26.  She is also the mother and legal guardian to her adult son, Noah Thibeault, who is severely disabled.  *Id.* ¶ 2.

Noah Thibeault, who is twenty-five years old, is diagnosed with severe autism spectrum disorder and anxiety, which cause him significant emotional dysregulation,

as well as other behavioral challenges, and impair his ability to communicate. *Id.* ¶ 17. Noah requires 24-hour care and supervision, which Ms. Thibeault, as Noah's sole caregiver, provides. *Id.* ¶ 18.

Ms. Thibeault's mother, Diane Marchetti, is the record owner of the Property. Ms. Marchetti is not a party in this case. In February 2025, Ms. Marchetti suffered a medical event that required her to transition from the Property to an assisted living facility, The Highlands, in Topsham, Maine. *Id.* ¶¶ 3, 20. Although they are not tenants subject to a lease, since Ms. Marchetti's transition to The Highlands, Ms. Thibeault and Noah continue to reside at the Property and Ms. Thibeault has undertaken all maintenance and financial obligations at the Property. *Id.* ¶ 21.

### 2.   Caroline Thibeault's Hairstyle Service and Oak Hill Community Rules

Ms. Thibeault is a licensed hairstylist and relies on her occupation as her sole source of income. *Id.* ¶ 22. In the past, Ms. Thibeault was able to work as a hairstylist while simultaneously providing care and supervision for Noah. *Id.* ¶¶ 22-31. She would rent a chair or booth at local salon and bring Noah with her to work. *Id.* ¶¶ 26-28. However, disruption from the COVID-19 pandemic and other circumstances out of her control caused Ms. Thibeault repeatedly to relocate her workspace. *Id.* ¶ 26. The frequent change in work environments aggravated Noah's emotional dysregulation, anxiety, and behavioral problems. *Id.* ¶¶ 27-28. On several occasions, Noah's behavioral episodes disrupted the workspace and made others, including customers, uncomfortable. *Id.* ¶ 29. After consulting Noah's medical providers, Ms. Thibeault began exploring alternative work arrangements that would provide Noah

with the stability and routine his disability required while maintaining her ability to earn a living. *Id.* ¶¶ 28-31.

At that time, in early 2023, Oak Hill's rules permitted commercial activities within a condominium unit under certain conditions. *Id.* ¶¶ 32-34. Under Rule 19, adopted in 2021, Oak Hill permitted commercial activities within units, so long as the activity was not externally detectable, complied with zoning laws, did not create undue traffic, and remained consistent with the residential character of the community. *Id.* ¶¶ 33-34; *id.*, Attach. 2, *2023 Rules*. Many Oak Hill residents operated similar commercial activities from their respective units, including a quilting business, pet care services, interior and exterior contracting work, the manufacture and sale of custom bicycle racks, counseling services, seamstress services, catering, and stained-glass sales. *Id.* ¶ 35-36.

Accordingly, in spring 2023, Ms. Thibeault began operating a limited hairstyling service from the Property. *Id.* ¶¶ 31, 37-40. She maintains that her hairstyling service complied with the requirements of Rule 19. *Id.* ¶¶ 40-50. Although she received confirmation from both Oak Hill's Property Manager that she complied with Rule 19 and the Topsham Code Enforcement Officer (CEO) that her activity qualified as a permissible "minor home occupation" under applicable zoning law, Ms. Thibeault received conflicting communication from the Board about her compliance. *Id.* ¶¶ 41-68. Believing her conduct was permissible under community rules, Ms. Thibeault submitted to the Board a request to confirm her compliance, which she alleges the Board scrutinized more closely than other similar requests,

including by directing other residents to record visitors coming to and from the Property.  *Id.* ¶¶ 69-78.

### 3.    The Board Determines Caroline Thibeault's Hairstyling Service Does Not Comply with Community Rules

After receiving Ms. Thibeault's request to confirm compliance, the Board consulted legal counsel.  *Id.* ¶¶ 57-58.  In correspondence with counsel, the Board noted that although the Oak Hill Declaration prohibits "commercial activity," the Board had previously adopted Rule 19 to permit such activities under defined conditions.  *Id.* ¶ 59.  Counsel advised that, while the Declaration controls over any inconsistent rules, the term "commercial activity" is not defined in the Declaration or Oak Hill's rules and therefore required an analysis of whether Ms. Thibeault's use was incidental and subordinate to residential use, consistent with applicable zoning law, the nature of the Property's primary use, and in consideration of comparable uses by neighboring units.  *Id.* ¶¶ 60-65.  Counsel further recommended consulting with the Topsham CEO but did not inform the Board that Ms. Thibeault had already received confirmation from the CEO that her use was permissible.  *Id.* ¶¶ 66-67.  According to the Plaintiffs, the Board fired Counsel shortly thereafter.  *Id.* ¶ 68.  In addition, the Topsham CEO confirmed that he had advised the Board directly that Ms. Thibeault's hairstyle service complied with local zoning law.  *Id.* ¶ 69; *id.*, Attach. 6, *CEO Email*.

On June 21, 2023, the Board voted to table Ms. Thibeault's request for confirmation of compliance and instead sought additional community input.  *Id.* ¶¶ 70-71.  The Plaintiffs report a mixed response from the Oak Hill community.  Some

residents expressed support for the Plaintiffs, acknowledging that other residents engaged in similar commercial activities, raised concerns regarding the lack of services available for individuals with disabilities, and called for consistent enforcement of the community rules. *Id.* ¶¶ 72-73. Around this time, Ms. Thibeault became aware of statements made by another resident in a public restaurant near Oak Hill, disparaging her and Noah and suggesting that the Board had already decided against her and had encouraged surveillance of her home by other residents. *Id.* ¶¶ 74-75. Visitors to the Plaintiffs' home also observed individuals photographing vehicles near the Property. *Id.* ¶¶ 77-78. The Plaintiffs claim this level of scrutiny from the Board was unique to the Plaintiffs and that the Board had never subjected other residents to surveillance. *Id.*

On July 19, 2023, the Board determined Ms. Thibeault's hairstyle service was not permitted by community rules. *Id.* ¶ 79. The Plaintiffs claim that Ms. Thibeault was not given an opportunity to be heard directly by the Board prior to its determination. *Id.* ¶ 80. The Plaintiffs also maintain that her use complied with Rule 19 and was consistent with the Board's continued allowance of other residents' similar activities. *Id.* ¶ 80. The Plaintiffs further claim that the Board's decision failed to acknowledge the purpose for the requested activity was to care for Noah, who is disabled, address their former counsel's guidance that the Oak Hill Declaration's prohibition of "commercial activity" was ambiguous, that Rule 19 may require clarification, or that they consult the Topsham CEO on applicable zoning law. *Id.* ¶¶ 81-83. According to the Plaintiffs, the Board did not amend Rule 19 or

8

otherwise clarify the definition of "commercial activity" before determining her use was a violation. *Id.* ¶ 84.

### 4. Ms. Thibeault's Reasonable Accommodation Requests and the Defendants' Allegedly Retaliatory Conduct

Following the Board's determination that Ms. Thibeault's use violated community rules, the Plaintiffs allege the Defendants engaged in a pattern of harassment and retaliation in an attempt to force the Plaintiffs out of Oak Hill. On August 11, 2023, the Board informed Ms. Thibeault that it had received complaints from other community members about her hairstyle services but refused to provide any information about those complaints when Ms. Thibeault asked for more information. *Id.* ¶¶ 85-86. On August 17, 2023, the Board sent Ms. Thibeault an email asking "approximately how many different service providers come each day" to assist Noah, suggesting that the Board was monitoring the number of visitors to the Property. *Id.* ¶ 87. The email also stated it would be a violation of the Oak Hill Declaration if Ms. Thibeault had received compensation for her hairstyling services. *Id.* ¶ 90. On August 19, 2023, the Board sent a notice to Ms. Marchetti, detailing the alleged violations of Oak Hill rules. *Id.* ¶ 93. On September 17, 2023, despite having already determined Ms. Thibeault's hairstyling service violated Oak Hill rules, the Board held another meeting about the dispute. *Id.* ¶ 94.

On October 18, 2023, the Board revised Rule 19 "in a manner that specifically targeted [Ms. Thibeault's] activities and served to reinforce its prior determination that she was in violation of" community rules. *Id.* ¶¶ 101-103. According to Ms. Thibeault, the Board's amendment to Rule 19 violated its own Bylaws. *Id.* ¶¶ 97-98,

9

101-102. Ms. Thibeault further alleges the Board removed her from the Oak Hill's residents' email list to prevent her from participating. *Id.* ¶ 99. She further alleges the Board revoked her access to the Oak Hill payment portal, blocking her from paying her monthly HOA fees and common expenses. *Id.* ¶ 100.

On October 30, 2023, citing Noah's disability, Ms. Thibeault submitted a formal request for reasonable accommodation under the Maine Human Rights Act (MHRA) and the Fair Housing Act (FHA). *Id.* ¶ 117. However, before the Board responded to her request, on December 4, 2023, the Board issued a notice of violation to Ms. Marchetti, explaining that it would begin assessing a $75 daily fine continued Rule 19 violations. *Id.* ¶ 128. The notice also incorrectly claimed that Ms. Thibeault operated her hairstyle services without a license, despite the fact that she maintained a valid license for her services. *Id.* ¶ 129. Between December 14, 2023 and January 18, 2024, several Oak Hill residents filed complaints to the Maine Cosmetology Board, which the Plaintiffs allege, given the several complaints' timing and near identical language, the Board coordinated. *Id.* ¶¶ 130-131. Around the same time, the Board also sent a complaint to Ms. Thibeault's mortgage lender, Bath Savings Bank, incorrectly asserting Ms. Thibeault operated her hairstyling service without a license. *Id.* ¶ 134.

On January 12, 2024, the Board denied Ms. Thibeault's reasonable accommodation request. *Id.* ¶ 135. In denying her response, the Board stated that "there is no suggestion . . . that Ms. Thibeault is an individual with a physical or mental disability. Likewise, there is no allegation that granting Ms. Thibeault's

request would afford her an equal opportunity to use/enjoy her housing that she is currently not receiving on account of a disability she has." *Id.* ¶ 136. Furthermore, the Board explained that permitting Ms. Thibeault's requested use would be a "fundamental alteration to the nature of the housing," which is impermissible "absent a revision to the Declaration by unanimous vote of the owners." *Id.* ¶ 139. The Board's response did not acknowledge Noah's disability, which was known to the Board. *Id.* ¶¶ 137-138.

Throughout 2024, Ms. Thibeault explored alternative arrangements for Noah's care to no avail. *Id.* ¶ 148. Some time that year, Noah was involved in a car accident that worsened his anxiety and behavioral challenges. *Id.* ¶ 146. He was also diagnosed with post-traumatic stress disorder. *Id.* The Board continued to assess Ms. Thibeault a daily penalty, which Ms. Thibeault deferred payment on while she contested the validity of her hairstyling service. *Id.* ¶ 145.

On November 22, 2024, Oak Hill issued a demand letter to Ms. Thibeault and Ms. Marchetti, asserting that they owed $54,413.26 for common charges and assessments. *Id.* ¶ 150. Ms. Thibeault claims the Board altered the accounting method for accruing daily penalties to manufacture an artificial delinquency on the Property's fees in order to initiate foreclosure proceedings. *Id.* ¶¶ 151-154. On January 22, 2025, Oak Hill filed a foreclosure complaint against Ms. Marchetti, as the Property owner, in Sagadahoc County Superior Court, docket number RE-25-01. *Id.* ¶ 157; *id.*, Attach. 16, *Foreclosure Compl.* The Plaintiffs sought unsuccessfully to intervene in the state foreclosure action. *See Oak Hill Condos. v. Diane Marchetti,*

11

2026 ME 31, 354 A.3d 1128 (affirming trial court's denial of the Plaintiffs' motion to intervene).

On April 30, 2025, the Plaintiffs submitted a second reasonable accommodation request to the Board, outlining Noah's increased needs following his car accident and Ms. Thibeault's need as his primary caregiver and legal guardian to provide him with a stable home environment while allowing her to make a living. *Compl.* ¶¶ 161-162.  This time, Oak Hill quickly denied her request, explaining that Ms. Thibeault could "rent a commercial space and take her son to work with her." *Id.* ¶ 163-164.

### 5. The Plaintiffs File a Maine Human Rights Commission Complaint

On May 28, 2025, Ms. Thibeault filed a complaint with the Maine Human Rights Commission (MHRC), asserting Oak Hill had engaged in housing discrimination based on Noah's disability. *Id.* ¶ 168.  An MHRC investigator conducted a preliminary investigation and, on September 9, 2025, issued a report concluding "[t]here are Reasonable Grounds to believe that Oak Hill Condominiums Association discriminated against [Ms. Thibeault] based on disability." *Id.* ¶¶ 169-176; *id.*, Attach. 19, *MHRC Investigator's Report* at 5.  Specifically, the investigator found:

> [Ms. Thibeault] established her prima-facie case.  [Noah] comes within the protections of the MHRA as a person with disabilities, as does [Ms. Thibeault] given her association with a disabled person, *see* 5 M.R.S. § 4553(1-D).  [Oak Hill] knew of [Noah's] disabilities.  [Ms. Thibeault] requested authorization to offer limited hair stylist services from her home, and subsequently, a halt to foreclosure proceedings and the elimination of accumulated fees and late charges due to what [Oak Hill] viewed as continued rule violations.  [Ms. Thibeault and Noah] needed

the requested accommodation because [Ms. Thibeault] must simultaneously work and care for [Noah], and she is unable to bring [Noah] to an off-Premises work location. Given the limited scope of [Ms. Thibeault's] business activity, the requested accommodation was reasonable on its face, and [Oak Hill] rejected [Ms. Thibeault's] accommodation requests.

[Oak Hill] failed to establish a defense to [Ms. Thibeault's] reasonable accommodation request by showing the request was unreasonable. [Ms. Thibeault's] business activity may have caused minor annoyance and inconvenience (singular instances of a client parking in a neighboring driveway and knocking on a door, a slight increase in traffic, etc.) yet, it did not pose an undue burden in that it was not too expensive, was not an undue administrative burden, and was not unreasonable for some other reason. [Oak Hill's] offers to aid [Ms. Thibeault] in relocating her business off-Premises were futile as the very reason for the accommodation request was to keep [Noah] with [her], at home, while she worked. [Oak Hill] failed to engage in an informal, interactive process to determine whether an appropriate, feasible accommodation existed. Instead of engaging in good faith dialogue with [Ms. Thibeault], [Oak Hill] amended its rule to the detriment of [Ms. Thibeault] and [Noah].

*MHRC Investigator's Report* at 4-5.

On October 27, 2025, the MHRC held a public hearing on the Investigator's report. *Compl.* ¶ 177. During the hearing, the MHRC commissioners noted that Oak Hill ignored Ms. Thibeault's reasonable accommodation requests on behalf of her son and that the timing and severity of the financial penalties against Ms. Thibeault and Ms. Marchetti strongly suggested discriminatory, punitive, and retaliatory intent rather than legitimate enforcement of community rules. *Id.* ¶ 179. The MHRC commissioners further observed that Oak Hill's position would not likely withstand judicial scrutiny. *Id.* ¶ 180. The MHRC Commissioner voted unanimously "to find there are **Reasonable Grounds** to believe that Oak Hill Condominiums discriminated against Caroline Thibeault based on disability." *Id.*, Attach. 20, *MHRC*

13

*Comm'n Meeting Mins.* at 3 (emphasis in original).  The MHRC did not enter into a conciliation agreement with the Plaintiffs within the ninety period as provided by Maine law.  *Compl.* ¶ 182.

In the months that followed, the Plaintiffs report that the Defendants continue to harass, discriminate, retaliate, and surveil them and the Property, including directing residents to take pictures of the Property and threatening to issue additional violations for trivial matters, such as the wattage of a lightbulb outside the unit and ordering Ms. Thibeault to take down a set of string lights.  *Id.* ¶ 187.  Ms. Thibeault alleges that she has suffered and continues to suffer severe emotional distress, including anxiety, fear, and humiliation as a result of the Defendants' pattern of discriminatory, harassing, and retaliatory conduct.  *Id.* ¶¶ 194-197.

### 6.    The Plaintiffs' Complaint

The Plaintiffs claim that the Defendants' failure to grant a reasonable accommodation necessary to permit Ms. Thibeault to conduct limited in-home hairstyling services as a means of maintaining employment while providing continuous care for Noah and the Defendants' pattern of selective enforcement, refusal to engage in a good faith interactive process, retaliation, harassment, surveillance, and escalating financial penalties in response to Ms. Thibeault's request for a reasonable accommodation violate state and federal law.  *Id.* ¶¶ 199-317.  Specifically, the Plaintiffs allege that the Defendants' conduct violates the MHRA, the FHA, and the Maine Condominium Act (MCA) (Counts II-IX).  *Id.* ¶¶ 223-303.  The Plaintiffs also allege the Defendants' conduct constitutes both intentional and

14

negligent infliction of emotional distress against Ms. Thibeault (Counts X-XI). *Id.* ¶¶ 304-317. The Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs.[4] *Id.* at 36-53.

## II.   THE PARTIES' POSITIONS

### A.   The Plaintiffs' Motion for a Temporary Restraining Order

The Plaintiffs' motion for a TRO requests four forms of relief from the Court. First, "a reasonable accommodation permitting Plaintiff to provide limited hair services from [the Property] subject to the reasonable conditions" provided in their motion. *Mot. for TRO* at 1. Second, "an order directing Defendants to cease all surveillance, discrimination, harassment, and retaliatory conduct toward Plaintiff and her son." *Id.* Third, the Plaintiffs ask that the Court dismiss with prejudice the state foreclosure action against Ms. Marchetti. *Id.* at 1-2. Finally, the Plaintiffs request "discharge of any and all violations and related fees, fines, penalties, and/or liens asserted by Defendants against Plaintiffs and the Property." *Id.* at 2.

The Plaintiffs maintain they have met their burden to show that the factors for issuing a TRO weigh in their favor. They argue they have demonstrated a substantial likelihood of success on the merits of their claims for disability discrimination in housing, retaliation for protected conduct, interference with civil rights, aiding and abetting unlawful discrimination, and related causes of action

---

[4]     Counts I, XII, XIII, although framed as causes of action, are requests for specific relief: Count I seeks declaratory relief and Counts XII and XIII seek preliminary and permanent injunctive relief, respectively. *Compl.* ¶¶ 199-222, 318-327.

arising under the MCA.[5]  *Id.* at 14-22.  Next, the Plaintiffs insist they have demonstrated irreparable harm under the law given the combination of the Plaintiffs' substantial likelihood of success on the merits of their claims and that the Defendants' state foreclosure action against the Property creates a direct and imminent threat of loss to the Plaintiffs.  *Id.* at 22-24.  The Plaintiffs argue the balance of harms weigh in favor of injunctive relief, as it would preserve the status quo, protect Ms. Thibeault from continued accrual of fines while she maintains her hairstyle business and provides for Noah, and would not impose an undue burden on the Defendants.  *Id.* at 24-26.  Finally, the Plaintiffs maintain the public interest favors their requested TRO because enforcement and protection of civil rights serve a public purpose beyond the Plaintiffs' individual interests.  *Id.* at 26-27.  Should the Court issue the requested relief, the Plaintiffs urge the Court to waive any bond requirement.  *Id.* at 27-28.

### B.    The Defendants' Opposition

The Defendants oppose the Plaintiffs' motion.  First, the Defendants argue that if the Plaintiffs are correct that they are likely to succeed on the merits of their claims, then they are also likely to succeed in defending the state foreclosure action, indicating that injunctive relief is therefore unwarranted.  *Defs.' Opp'n* ¶ 1.  The Defendants further argue that the Plaintiffs have not shown irreparable harm because the procedural posture of the foreclosure action does not present an imminent threat to the Plaintiffs losing their home.  *Id.* ¶ 2.  Next, the Defendants dispute that

---

[5]    The Plaintiffs do not argue the likelihood of success on their state tort law claims.

the balance of harm weighs in the Plaintiffs' favor, explaining that Ms. Thibeault continues to operate her hairstyling service from the Property and has not paid any of the accrued fines while she litigates her claims. *Id.* ¶ 3. Similarly, the Defendants argue that public policy does not favor the requested injunction, because Ms. Thibeault may continue to operate the service pending resolution of her claims and the state foreclosure action. *Id.* ¶ 4.

### C.    The Plaintiffs' Reply

In reply, the Plaintiffs argue that the Defendants' opposition does not meaningfully dispute their right to interim relief. *Pls.' Reply* at 2. The Plaintiffs go on to reiterate their motion's arguments supporting their requested injunction. *Id.* at 2-5.

## III.    LEGAL STANDARD

Injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The standard for issuing a temporary restraining order is the same as for a preliminary injunction. *See Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp. 2d 63, 66 (D. Me. 2008). The movant must show "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (quoting *Nieves-Márquez v. P.R.*, 353 F.3d 108, 120 (1st Cir. 2003)). "The

17

First two factors are the most important." *Together Emps. v. Mass Gen. Brigham, Inc.*, 19 F.4th 1, 7 (1st Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Trial courts enjoy wide discretion in making judgments regarding the appropriateness of preliminary injunctive relief. *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 158 (1st Cir. 2004).

## IV.    DISCUSSION

Because a preliminary injunction preserves the Court's ability to grant final relief, the movant must show irreparable harm that, in the absence of a preliminary injunction, would "impair the court's ability to grant an effective remedy" following a decision on the merits. *See* 11A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed. 2021). In the context of a TRO, an irreparable injury is one which "cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005); *accord Mass Gen. Brigham, Inc.*, 19 F.4th at 7-8 ("[A]dequate legal remedies foreclose injunctive relief . . . .") (citation omitted).

Although acknowledging that they seek monetary relief for their claims, the Plaintiffs argue the alleged harms caused by the Defendants "cannot be fully remedied by money alone." *Mot. for TRO* at 23. As the Plaintiffs explain

> Defendants' initiation and continued pursuit of foreclosure proceedings creates a direct and imminent threat of loss of Plaintiffs' home, resulting in the potential displacement of Plaintiff and her disabled son and the permanent deprivation of housing rights that cannot be restored through monetary damages . . . In particular, the denial of a reasonable accommodation necessary to allow Plaintiff to provide continuous care

18

> for her disabled son while maintaining her livelihood results in ongoing and compounding harm that directly impacts Plaintiffs' ability to remain in their home and for Plaintiff to fulfill her caregiving responsibilities. The foreclosure process and escalating fines do not merely impose financial consequences, but operate as enforcement mechanisms that threaten the forced loss of Plaintiffs' residence, a harm that is by its nature irreparable once carried out.

*Id.* Given the state foreclosure proceedings, combined with "the high likelihood of [their] success on the merits," including the MHRC's findings, the Plaintiffs insist they have satisfied the irreparable harm requirement. *Id.* at 22-24.

Although the Plaintiffs are correct to note "that when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief," *EEOC v. Astra USA, Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) (citations omitted), the Court cannot conclude that they have met their burden to show "a substantial injury that is not accurately measurable or adequately compensable by money damages," *Ross-Simon of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996), "grounded on something more than conjecture, surmise, or [their] unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II*, 370 F.3d at 162. As the Plaintiffs are careful to argue, the only aspect of their requested injunction that legal remedies arguably cannot adequately compensate relates to the pending state foreclosure action. However, as the Defendants point out, those proceedings remain pending and the trial court has not issued judgment. The Plaintiffs' claim of irreparable harm arising from the state foreclosure action is therefore speculative.

Moreover, the interest at stake in the state foreclosure action concerns Ms. Marchetti's ownership of the Property and the Plaintiffs, as possessory occupants of

19

the Property, are not parties to that action. Nor does the state foreclosure action impede the Plaintiffs' ability to pursue the claims alleged in their complaint, as evidenced by the proceedings before the MHRC. As the Supreme Judicial Court of Maine explained in its opinion affirming the trial court's denial of the Plaintiffs' motion to intervene in the state foreclosure action, the Plaintiffs' purely possessory interest as an occupant "would be a stake in any potential eviction proceeding," not the underlying foreclosure action against Ms. Marchetti. *See Oak Hill Condos. v. Diane Marchetti, et al.*, 2026 ME 31, ¶ 10, 354 A.3d 1128. Again, the Plaintiffs have not shown irreparable harm because eviction proceedings have not commenced and this Court will not make a prediction about if and when those proceedings are likely to commence.

Furthermore, it seems unlikely that this Court has authority to enjoin the state foreclosure action as the Plaintiffs request. The Anti-Injunction Act prohibits federal courts from enjoining state court proceedings except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "This prohibition against enjoining proceedings in a state court applies to state foreclosure proceedings." *Murphy v. Bank of America, N.A.*, No. 12-11034-FDS, 2012 U.S. Dist. LEXIS 144417, at *8 (D. Mass. Oct. 5, 2012) (first citing *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127 (5th Cir. 1990); and then citing *Ungar v. Mandell*, 471 F.2d 1163 (2d Cir. 1972)). Although the Plaintiffs' motion and the Defendants' opposition were filed in state court before the matter was

20

removed to federal court, the Plaintiffs' reply—filed after removal—did not address this issue.[6]

Finally, the Plaintiffs claims that without the requested injunction, Ms. Thibeault cannot make a living and support Noah is unsupported by the limited record before the Court. Based on the party's briefing, it is clear Ms. Thibeault continues to operate her hairstyling service from the Property and that she has not paid the fines accrued. In their opposition to the Plaintiffs' motion for an expedited hearing, the Defendants explain that they do not seek to enjoin Ms. Thibeault's continued operation of her hairstyling service as the litigation proceeds, "preferring instead that the Court make a reasoned decision after considering all the facts." *Obj. to Hr'g* ¶ 1. The Plaintiffs did not meaningfully respond to the Defendants' representation. Additionally, the Plaintiffs' own briefing indicates that Ms. Thibeault continues to operate her hairstyling service.

The Court therefore cannot conclude that the Plaintiffs have met their burden to show irreparable harm in the absence of their requested injunction. The Plaintiffs' several claims all appear susceptible to remedy by a damages award, the state foreclosure action does not present an immediate threat of substantial injury to the

---

[6]    Similarly, because an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required," FED. R. CIV. P. 65(d)(1)(B)-(C), the scope of the Plaintiffs' request for the Court to order the Defendants "to cease all surveillance, discrimination, harassment, and retaliatory conduct toward Plaintiff and her son," *Mot. for TRO* at 1, appears impermissibly broad and vague, and raises fundamental issues of enforceability. This complexity is further compounded by the complaint's allegation that at least some of the retaliatory conduct, albeit allegedly at the direction of the Defendants, was committed by other residents, some known but others known to the Plaintiffs, who are not parties in this action. Again, the Court recognizes the Plaintiffs filed their motion while the matter was still in state court, and thus possibly subject to a different state law standard, but the Plaintiffs should have anticipated the applicable federal standard in their reply or sought leave to amend their motion after removal.

Plaintiffs (and appears to require relief the Court could not order in any event), and the limited record before the Court shows that Ms. Thibeault has been able to continue operating her hairstyle service while she pursues her claims.

Accordingly, the Court need not address the remaining factors governing the issuance of a TRO, because the Plaintiffs have not shown the requisite threat of irreparable injury. *Mass Gen. Brigham, Inc.*, 19 F.4th at 7-8 (failure to show irreparable harm ends the Court's inquiry); *Charlesbank Equity Fund II*, 370 F.3d at 162 (irreparable harm is "a necessary threshold showing for an award of preliminary injunctive relief").

However, in concluding that the Plaintiffs have not met their burden to obtain their requested TRO, the Court emphasizes that it is not weighing whether the Plaintiffs are likely to prevail on the merits of their claims. *Esso Standard Oil, Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) ("[T]he party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor"); *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) ("A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right"). Despite the "serious legal issues" alleged, because the Plaintiffs have not shown the requisite irreparable harm, "they [have] failed to sustain their burden to demonstrate" that their requested TRO should issue at this time. *We the People PAC v. Bellows*, 512 F. Supp. 3d 74, 77 (D. Me. 2021).

22

## V.    CONCLUSION

The Court therefore DENIES the Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (ECF No. 7), to the extent the Plaintiffs request a temporary restraining order, and Motion for Expedited Hearing for Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (ECF No. 1-4).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2026